**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

GARY G. GOAD,

                             Petitioner,

        - v -                           9:19-CV-0965
                                           (MAD/DJS)

SUPERINTENDENT,[1]

                             Respondent.

**APPEARANCES:**                   **OF COUNSEL:**

GARY G. GOAD
Petitioner, *Pro Se*
00-B-1049
Elmira Correctional Facility
P.O. Box 500
Elmira, New York 14902

HON. LETITIA JAMES             PAUL B. LYONS, ESQ.
Attorney General for the State of New York   DENNIS A. RAMBAUD, ESQ.
Attorney for Respondent           Assistant Attorneys General
28 Liberty Street
New York, New York 10005

**DANIEL J. STEWART**
**United States Magistrate Judge**

---

[1] Since filing the Petition, Petitioner has been transferred to Elmira Correctional Facility. Dkt. No. 39. The Clerk is directed to update the Court docket to name the Superintendent of Elmira Correctional Facility as Respondent since "the proper respondent in a habeas corpus petition is the officer having custody of the applicant." *Perich v. Mazzuca*, 2007 WL 2455136, at *1 (E.D.N.Y. Aug. 23, 2007) (citing Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts).

## <u>REPORT-RECOMMENDATION and ORDER</u>[2]

Petitioner filed the present Petition while an inmate at Clinton Correctional Facility. Dkt. No. 1 & 1-1, Pet. Petitioner seeks a Writ of *Habeas Corpus* pursuant to 28 U.S.C. § 2254 on the grounds that (1) he was deprived of his Due Process rights when he did not receive a preliminary parole revocation hearing within 15 days of the lodging of a parole revocation warrant against him in Virginia on September 3, 2015; (2) he was deprived of effective assistance of counsel at his final parole revocation hearing on July 26, 2018; (3) he was improperly listed as a COMPAS level 1 offender in reports prepared by Parole and a Parole official falsely indicated that he had waived his right to a preliminary hearing when he had not; and (4) the Division of Parole failed to produce certificates of conviction for crimes he allegedly committed while on parole before he was extradited to New York on the parole warrant in July of 2018. Pet. & Dkt. No. 13, Pet.'s Aff. Respondent has filed a Memorandum of Law in Opposition to the Petition. Dkt. No. 16-1, Resp. Mem. of Law. Petitioner has filed a Traverse. Dkt. No. 21. For the reasons that follow, this Court recommends that the Petition be **denied.**

### I. BACKGROUND

On May 23, 2000, Petitioner was convicted in Steuben County Court of Assault in the First Degree, Robbery in the First Degree, two counts of Assault in the Second Degree, and one count of Reckless Endangerment. Dkt. No. 16-2, State Court Record ("SR.") at

---

[2] This matter was referred to the undersigned for a report-recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

2

pp. 24 & 44.[3]  Petitioner was sentenced to an aggregate term of 15 years imprisonment, to be followed by 5 years of post-release supervision.  *Id.*; *People ex rel. Goad v. Coveny*, 179 A.D.3d 1266 (3d Dep't 2020).

Petitioner was released on parole, with conditions, and shortly thereafter relocated to Virginia.  Dkt. No. 1-1 at p. 1; SR. at p. 67.  The authorities in Virginia supervised Petitioner's parole pursuant to the Interstate Compact for Adult Offender Supervision ("ICAOS").  *Id.*  While still in Virginia, and during the period from March 2, 2015 to March 5, 2015, it was alleged that, *inter alia*, Petitioner stalked and harassed two females via computer and phone, including repeatedly calling one and indicating that he wanted to jab her with a hypodermic needle and engage in sexual intercourse.  SR. at pp. 67, 69-70, & 83.  The Lynchburg, Virginia Police arrested Petitioner on two misdemeanor charges, and he was and taken into custody at that time.  SR. at p. 24.  The New York State Parole Board was advised of Petitioner's arrest and issued a warrant, which was lodged with the Virginia authorities on or about September 3, 2015.  *Id.*  Petitioner was not immediately returned to New York but was held by Virginia authorities and was convicted of charges in that jurisdiction on which he served a sentence in that state.  SR. at p. 25.  Petitioner was then returned to New York on July 6, 2018, pursuant to the Parole warrant.  *Id.*

Upon his return to New York, Petitioner was scheduled for a final revocation hearing before Parole authorities.  That final revocation hearing was held on July 26,

---

[3] Page citations to the State Court Record refer to the pagination generated by CM/ECF, the Court's electronic filing system.

2018, 20 days after Petitioner's arrival in New York.  SR. at pp. 32-41.  Based on the Record, it does not appear that any preliminary hearing was held prior to the final parole hearing.[4]

Petitioner was represented by attorney Brenda Aston at the parole hearing before Administrative Law Judge David Stanton, and the Parole Board was represented by Parole Revocation Specialist ("PRS") Stephanie Vanatta, who pointed out Petitioner was a Category 1 based upon the original offense, and that he had over four years left on his original sentence.  SR. at p. 33.  At the time of the hearing, the Administrative Law Judge had received and reviewed the notice of violation, violation release report, case summary, and a copy of Petitioner's criminal history, as well as other documents.  SR. at p. 34.  The ALJ confirmed that counsel advised Petitioner of his rights as well as the availability of any pleas.  *Id.*  PRS Vanatta advised the court that Parole was looking for a plea by Petitioner to Charge No. 5 in exchange for a "hold" of 24 months, and further indicated a willingness to move back Petitioner's violation date for a period of time, referring to that as a "giveback."  SR. at pp. 33-35.  The ALJ considered the matter on the record and indicated his consent to accept a plea to one of the violations with an imposition of custody for 24 months from the point Petitioner was returned from Virginia to New York, and that he would also agree to move the violation date forward three months.  SR. at pp. 35-36.  As to the latter point, this would inure to Petitioner's benefit for purposes of the

---

[4]  Petitioner alleges that he twice requested from unnamed Virginia court officials that he be given a preliminary hearing on the parole violation charges. SR. at pp. 7-8.

previously imposed post-release supervision, as he would be given credit for those additional three months.

Although Petitioner's counsel had indicated to the Court early in the hearing that she discussed the matter with Petitioner and he was prepared to proceed with a plea, the ALJ nevertheless asked Petitioner specific questions regarding the plea offer to make sure that he understood it. SR. at pp. 36-41. Petitioner indicated that he understood the offer and understood that he had the right to proceed to a trial but wished to enter a plea to the parole violation. SR. at pp. 38-41. The plea was accepted, and Parole imposed the agreed-to sentence. SR. at pp. 3 & 72-73. Petitioner was then returned to the custody of DOCCS and is presently housed at the Elmira Correctional Facility.

Petitioner appealed the finding of the Administrative Law Judge revoking his parole and imposing a time assessment. SR. at p. 72. The Appeals Unit recommended affirming the ALJ's decision, noting that there were no objections raised during the final revocation hearing; that Petitioner's plea of guilty operated as a waiver of any antecedent claims; and, finally, that the time assessment imposed was neither excessive nor improper. *Id.* The Parole Board adopted the recommendations on November 6, 2018. SR. at p. 73.

On November 5, 2018, Petitioner filed a habeas corpus proceeding in New York State Court, alleging that he was denied a preliminary parole revocation hearing, and requesting that he be released and returned to parole supervision. SR. at pp. 120-127. The matter was heard by Judge Rich of the Chemung County Court. After review, the court denied the petition and noted that Petitioner was held in Virginia through prosecution until he completed his Virginia sentence in 2018. SR. at pp. 24-25. The court

ruled that Petitioner's argument that he was entitled to a preliminary hearing within 15 days of the date that the Virginia authorities received the parole detainer, September 3, 2015 was not correct as Petitioner was not within the convenience and practical control of DOCCS while in Virginia, and therefore a preliminary hearing in September 2015 was not required.  SR. at p. 25.  That holding was ultimately upheld on appeal.  *People ex rel. Goad v. Coveny*, 179 A.D.3d at 1267 ("where the alleged violator is detained in another state, the violation warrant is not deemed executed and the 15-day period is not triggered until the alleged violator has completed his or her out-of-state sentence and is available for extradition.") (citing Executive Law § 259–i(3)(a)(iii)).

The present habeas corpus Petition was filed in the Northern District of New York on August 7, 2019.  The Appellate Division decision denying Petitioner's state court writ of habeas corpus application was issued five months later, on January 9, 2020.  There is no indication that Petitioner attempted to appeal that denial to the New York State Court of Appeals and the time to do so has now expired.

## II. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Petitioner bears the burden of proving by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); *Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997); *Rivera v. New York*, 2003 WL 22234697, at *3 (S.D.N.Y. Aug. 28, 2003).  A federal court may not grant *habeas* relief to a state prisoner on a claim unless the state court adjudicated the merits of the claim and such adjudication either:

1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Hawkins v. Costello*, 460 F.3d 238, 242 (2d Cir. 2006).

The Second Circuit has summarized the application of the standard of review under AEDPA as follows:

[u]nder AEDPA, we ask three questions to determine whether a federal court may grant habeas relief:  1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled?  2) If so, was the state court's decision "contrary to" that established Supreme Court precedent?  3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Williams v. Taylor*, 529 U.S. 362 (2000) and *Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).  The standard of review under § 2254(d) is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt."  *Renico v. Lett*, 559 U.S. 766, 773 (2010).  "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

The phrase "clearly established Federal law" refers to "the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  A state court decision is "contrary to" established Supreme Court precedent "if the state court arrives at a conclusion opposite

7

to that reached by th[e] Court on a question of law or if the state court decides a case differently than th[e] Court has on a set of materially indistinguishable facts." *Id.* at 413. A state court decision is an "unreasonable application" of established Supreme Court precedent "if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* AEDPA also requires that "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005); *Boyette v. LeFevre*, 246 F.3d 76, 88 (2d Cir. 2001).

## III. DISCUSSION

### A. Due Process Claim

Petitioner's primary argument is that the failure of New York State Parole authorities to hold a preliminary hearing within 15 days of the filing of a parole warrant with Virginia officials in September of 2015 violated his rights under the Due Process Clause of the United States Constitution. In a related argument, Petitioner asserts that documentation filed in his parole proceeding erroneously indicated that he "waived" his right to a preliminary hearing when in fact he never did so. In support of his position, Petitioner cites the Supreme Court case of *Morrissey v. Brewer*, 408 U.S. 471 (1972).

#### 1. Procedural Posture of the Due Process Claim

As noted by Respondent's counsel, at the time the present action was filed in federal court, Petitioner had not exhausted his due process claims to the highest court in

New York State.  Resp. Mem. of Law at p. 9.  In that regard, it appears that Petitioner's claims are unexhausted, but not procedurally barred.  In light of that circumstance, this Court adopts Respondent's invitation to consider and recommend dismissal of those claims on the merits, pursuant to 28 U.S.C. § 2254(b)(2).

## 2.  *Effect of the Parole Admission*

Petitioner entered a knowing and voluntary admission to his parole violation petition on July 26, 2018.  SR. at pp. 36-37.  As a result, Petitioner waived all prior procedural defects that allegedly occurred, including any claim that he was denied a preliminary hearing, or that parole officials erroneously represented that he waived such a hearing,[5] or failed to produce certificates of conviction, or misstated or failed to calculate his COMPAS level, or made other misrepresentations.  *See Johnson v. Carlsen*, 2010 WL 1817343, at *7 (N.D.N.Y. Mar. 29, 2010) ("Johnson waived all hearing defects by pleading guilty at his final parole revocation hearing."), *report and recommendation adopted*, 2010 WL 1837779 (N.D.N.Y. May 5, 2010) (citing *Tollett v. Henderson*, 411 U.S. 258, 267 (1973) and *United States v. Coffin*, 76 F.3d 494, 498 (2d Cir. 1996)).  As a result, all of Petitioner's claims regarding the timing and nature of the parole hearings that were or were not held, as well as the documentation provided or not provided to the Parole Hearing Officer, are mooted by Petitioner's plea.

---

[5]  Petitioner asserts that a representative from Parole, Daniel Amend, falsified a Parole document when he indicated that Petitioner had "waived" his right to a hearing, when in fact he never did so.  Pet.'s Aff. at pp. 1-2; SR. at pp. 17-18.  The Court notes that elsewhere in the record the notations regarding a preliminary hearing indicate that Petitioner was "not entitled" to such a hearing, SR. at p. 74, which as discussed hereafter accurately reflected Petitioner's status.  Therefore, any misstatement regarding the preliminary hearing or its waiver under state statutory standards is of no moment for this case, as such standards could not create a due process right that did not already exist.  *Blouin ex rel. Est. of Pouliot v. Spitzer*, 356 F.3d 348, 363 (2d Cir. 2004).

### 3. State Law Claims

In addition to being waived by his guilty plea, several aspects of Petitioner's claims before this Court are not cognizable. "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). "[Q]uestion[s] of state law . . . [are] not subject to federal habeas review." *Freeman v. Kadien*, 684 F.3d 30, 35 (2d Cir. 2012). "Simply put, 'federal habeas corpus relief does not lie for errors of state law.'" *DiGuglielmo v. Smith*, 366 F.3d 130, 137 (2d Cir. 2004) (quoting *Estelle v. McGuire*, 502 U.S. at 67). To the extent Petitioner is alleging that state officials improperly filled out state forms, that his state-mandated COMPAS level was improperly calculated, or that state officials failed to comply with state rules under New York's Executive Law, those claims all present pure questions of state law which are not cognizable in a federal habeas proceeding. *Fletcher v. Graham*, 2007 WL 2227505, at *3 (N.D.N.Y. July 31, 2007).

### 4. Analysis of Petitioner's Due Process Claim

In addition, when considered on the merits, Petitioner does not state a due process claim. As noted by the Supreme Court in *Morrissey*, the practice of granting parole to convicted inmates has become "an integral part of the penological system." 408 U.S. at 477. Pursuant to that program, the parolee is released from custody on certain conditions that are intended to help him or her reintegrate into society. *Id*. A collateral benefit to the state is that it reduces overcrowding in prisons and therefore saves the government substantial expense. *Id.* at p. 482.

In *Morrissey*, the Supreme Court rejected the argument proposed by the Attorney General of Iowa that a parolee has no protected liberty interest in the termination of his parole because he or she is still only doing the sentence previously lawfully imposed by the trial court. Rather, the Supreme Court concluded that the conditional freedom granted the parolee was a sufficient liberty interest to warrant, while not the full panoply of rights to a criminal defendant, at least an informal hearing structured to assure the parole violation finding is based upon the facts, and that there is informed exercise of the Parole Board's discretion. *Morrissey v. Brewer*, 408 U.S. at 484. That process would entail notice to the parolee of the charge as well as an initial review (preliminary hearing) by an independent parole official to determine if there is probable cause to believe the parolee committed a violation. *Id.* at 486-487. The preliminary hearing would be followed by a revocation hearing which would give the parolee an opportunity to be heard and would lead to an evaluation of any contested evidence and any factors in mitigation, prior to a final decision. *Id*. at 487-488.

The *Morrissey* decision, however, does not carry the day for Petitioner, as he is not arguing that his parole was revoked without a hearing; rather he is making a specific argument that under New York procedure he was entitled to a preliminary hearing within 15 days of the Virginia authorities receiving the New York parole warrant. Such a claim, however, was considered and rejected by the United States Supreme Court in the case of *Moody v. Daggett*, decided four years after *Morrissey*. In *Moody*, the question presented was whether the parolee, who was arrested for alleged murders occurring out-of-state, was entitled to an immediate parole hearing prior to the execution of the parole warrant.

*Moody v. Daggett*, 429 U.S. 78, 86-87 (1976).  The Court concluded that while a parolee was entitled to a parole hearing within a reasonable time after the parolee was taken into custody, he was not entitled to such a hearing while he was being detained on out-of-state charges.  *Id.*  The Court noted in that case that the parolee's detention was not premised upon the parole warrant, but rather from his two out-of-state homicide convictions.  *Id.* Accordingly, while *Morrissey* indicated the parole revocation hearing must be tendered within a reasonable time, in this situation the loss of liberty as a parole violator only occurs when the parolee is taken into custody under the parole warrant, which would be *after* the completion of his out-of-state misdemeanor and felony sentences.  *Id*.  The Supreme Court also noted the practical problem created by requiring an immediate parole hearing prior to the actual execution of the parole warrant: the parole board may wish to fashion a penalty that takes into consideration the actual sentence served on the underlying crime and the parolee's behavior while in custody, and the board would not be able to do so until the expiration of the parolee's intervening sentence.  *Moody v. Daggett*, 429 U.S. at 89.

Applying *Moody* to the facts in the present case, no immediate preliminary hearing or final revocation hearing was required while Petitioner was held in connection with the Virginia charges.  *D'Amato v. U.S. Parole Comm'n*, 837 F.2d 72, 76 (2d Cir. 1988) (holding that the parolee's right to a preliminary hearing is only triggered by the execution of a parole violation warrant, and not by the detention on the new charges.).  When Petitioner was returned to New York on July 6, he was entitled to due process in connection with his parole violation charge, but the final revocation hearing held on July

26, 2018, well within the 90-day limitation established by state law, satisfied the requirements of due process.  No preliminary hearing to establish probable cause was constitutionally required because, at that point in time, Petitioner had been convicted of out-of-state offenses, and those convictions provided probable cause.  *Moody v. Daggett*, 429 U.S. at 86 n. 7.  Within 20 days of his return to New York he was given a final parole hearing, during which he was represented by counsel and had an opportunity to be heard. There is no claim Petitioner was not provided with notice of the alleged violation.

Nevertheless, Petitioner persists in the argument that his due process rights have been violated because of a perceived deviation by parole authorities from the New York State rules and regulations that he believes apply to his situation.  As an initial matter, as noted above, it is not the province of this Court to review state law questions, and habeas review in federal court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  Further, any hearing procedure required by the Due Process Clause to the United States Constitution is determined by federal law, and by not state regulations which may require something altogether different. *See D'Amato v. U.S. Parole Comm'n*, 837 F.2d at 76 ("Nor need we address appellants' citation of the [Commission's Rules and Procedures Manual] in support of their claim of a right to a preliminary hearing since the Commission's internal procedures manual does not create a due process right in a parolee.").

Nor is Petitioner's argument even correct that New York State law or statutes required an immediate preliminary hearing in Virginia, or in fact any preliminary hearing

at all.  In New York, parole release, supervision, and revocation procedures are governed by N.Y. Executive Law §§ 259 *et seq.*  If the parole officer has reasonable cause to believe the parolee has violated a condition of release, a warrant may be issued, and the parolee may be arrested and taken into local custody.  N.Y. Exec. Law § 259-i(3)(a)(i).  The parolee is then entitled to a preliminary hearing, if at all, no later than 15 days from the date of the execution of the warrant so that a determination can be made whether probable cause exists that the parolee violated one or more conditions of his or her parole or post-release supervision.  N.Y. Exec. Law § 259-i(3)(c)(iv).  However, if the parolee is being supervised out-of-state, the arrest warrant on the parole violation will not be deemed to be "executed" until the alleged violator is "within the convenience and practical control of the department."  N.Y. Exec. Law § 259-i(3)(a)(iii); *People ex rel. Matthews v. New York State Div. of Parole*, 95 N.Y.2d 640, 646 (2001) (noting that under the Executive Law, "when a parolee is incarcerated outside of New York, the Division simply has to lodge its detainer and wait until the out-of-state authority relinquishes custody."); *People ex rel. Goad v. Coveny*, 179 A.D.3d at 1267.  Under New York law, therefore, "the 15-day period is not triggered until the individual has completed the out-of-state sentence." *People ex rel. Matthews v. New York State Div. of Parole*, 95 N.Y.2d at 645.  Petitioner's contention that he had a right to a preliminary hearing while in custody in Virginia is simply wrong as a matter of New York law.

Additionally, under New York procedure, "[p]roof of conviction of a crime committed while under supervision shall constitute probable cause for the purposes of this section."  N.Y. Exec. Law § 259-i(3)(c)(iv).  Accordingly, Petitioner, a parole violator

who had been convicted of crimes while on parole, was not entitled to a preliminary hearing under New York law. *See People ex rel. Burt v. Warden*, 18 Misc.3d 869, 873 (Sup. Ct. 2008) ("Because petitioner had been convicted of a new misdemeanor conviction while under parole supervision, he was not entitled to a preliminary hearing.").

In summary, Petitioner was alleged to have violated parole while living out-of-state. He was charged criminally and, having gone through the full range of due process rights associated with those Virginia criminal proceedings, was convicted in that jurisdiction. After completing his sentence there, he was turned over to the New York State Parole authorities, who then held a final parole hearing within 20 days, before an ALJ, with the Petitioner represented by counsel. After a detailed discussion with the Administrative Law Judge, Petitioner entered a knowing and voluntary guilty plea to the parole violation. On this record, due process has been satisfied.

## B.  Ineffective Assistance of Counsel Claim

Petitioner makes the blanket claim that he was appointed counsel that was "ineffective and intoxicated." Pl.'s Aff. at p. 5. "To establish ineffective assistance of counsel 'a defendant must show both deficient performance by counsel and prejudice.'" *Premo v. Moore*, 562 U.S. 115, 121 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)). Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. 86,

15

104 (2011) (quoting *Strickland v. Washington*, 466 U.S. at 689). A person challenging a conviction thus must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. at 687. Establishing prejudice requires Petitioner to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. at 694. On this record, Petitioner cannot make this showing.

As an initial matter, the Court agrees with Respondent's counsel that this ineffective assistance claim is not properly before the Court as it was not raised in the state court, and it has now been procedurally defaulted. *See* Resp. Mem of Law, Point II.

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that [] the applicant has exhausted the remedies available in the courts of the State[.]" 28 U.S.C. § 2254(b)(1)(A). Here, Petitioner failed to raise arguments regarding the alleged ineffective assistance of counsel in his state court appeal. SR. at pp. 3-20. "Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) (holding that the petitioner had not properly exhausted all state remedies because he did not include his claims in his petition for leave to appeal to his state's Supreme Court, where he had a right to raise those claims as part of the appellate review process). Only if the federal claim has been presented fairly to the state courts is the exhaustion requirement satisfied. *Blackshear v. Artus*, 2019 WL 7971870, at *5 (N.D.N.Y Oct. 30, 2019). A claim will be deemed to

have been fairly presented only if the state courts are given information regarding both the factual and legal premises with respect to the claim alleged in federal court. *Id.* Petitioner clearly failed to do so here.

By not raising these claims in his appeal, Petitioner did not exhaust all available state remedies. *Blackshear v. Artus*, 2019 WL 7971870, at *5. "[P]etitioner's forfeiture in state court of his [unexhausted claims] bars him from litigating the merits of those claims in federal habeas proceedings, absent a showing of cause for the procedural default and prejudice resulting therefrom." *Grey v. Hoke*, 933 F.2d 117, 121 (2d Cir. 1991). Because Petitioner does not assert any reason for failing to raise these claims, he cannot meet the cause and prejudice standard required to hear unexhausted claims. *Blackshear v. Artus*, 2019 WL 7971870, at *5 (holding that habeas relief is generally not available to procedurally defaulted claims if a petition fails to establish sufficient cause for the petitioner's procedural default).

Further, in considering Petitioner's argument it is important to consider the context in which the situation arose; namely, proceedings of a parole revocation hearing. It is not clear that the Sixth Amendment's right to effective assistance of counsel applies at all in that context. *See Rodriguez v. New York State Dep't of Parole*, 2021 WL 3888256, at *5 (N.D.N.Y. July 30, 2021), *report and recommendation adopted sub nom. Rodriguez v. New York State Dep't of Parole & Cmty. Supervision*, 2021 WL 3885320 (N.D.N.Y. Aug. 31, 2021); *Thurman v. Allard*, 2004 WL 2101911, at *15 (S.D.N.Y. Sept. 22, 2004). Even if it did, Petitioner has not demonstrated that he received ineffective assistance.

Petitioner raises two specific ineffectiveness claims: 1) the alleged intoxication of his counsel and 2) her failure to communicate with Petitioner about the proposed plea offer. Pet.'s Aff. at pp. 5-7. Neither merits relief.

Petitioner's first claim is made in a passing and entirely conclusory statement in his affidavit in support of the Petition. *Id.* at ¶ 12. "Petitioner's contentions in this regard are entirely conclusory and speculative, and afford him no basis for habeas relief." *Burkett v. Artus*, 2016 WL 6659492, at *13 n. 14 (N.D.N.Y. Nov. 10, 2016); *see also Wise v. Superintendent of Attica Corr. Facility*, 2010 WL 3943733, at *9 (W.D.N.Y. Oct. 7, 2010) (finding that "entirely conclusory" claim "cannot support a claim of ineffective assistance").

The claim that counsel was ineffective for failing to properly consult with Petitioner regarding the revocation proceedings is unsupported on this record and lacks merit.

Petitioner's argument that an affidavit from his appointed counsel in a state court proceeding establishes that she never spoke with him regarding the matter, Pet.'s Aff. at ¶ 14, misstates the record. The affidavit only establishes that counsel first met with Petitioner at the revocation hearing. *Id.* at Ex. F. It makes no representations about the content of discussions they had at the hearing. *Id.* Significantly, Petitioner raised no objection to his counsel's alleged lack of consultation or performance at his revocation hearing. *Id.* at Ex. G. He also fails to demonstrate that the level of discussion with his counsel at the time of the hearing was unreasonable. Petitioner, for example, "points to no defense, let alone evidence, that might have been used at the [hearing] had counsel

consulted with him more frequently." *Samet v. United States*, 2011 WL 5548012, at *5 (S.D.N.Y. Nov. 14, 2011).

Nor can Petitioner establish prejudice. The Court notes that during the parole hearing, Petitioner had substantial interaction with the ALJ, who accepted his admission to the parole violation. SR. at pp. 36-38. The ALJ noted, correctly, that the case was an extremely straightforward one as a result of the underlying convictions in Virginia, and that all that the Parole official would need to do to succeed in the matter was to produce certificates of conviction, which the Parole representative indicated on the record that she had. SR. at p. 35. In that circumstance, the decision to enter an admission for a compromise parole revocation sentence which could reduce his exposure was a reasonable and intelligent one. Petitioner can show nothing that his counsel did or did not do that would have affected the outcome of this proceeding. This is especially the case where the ALJ established, on the record, his knowledge of both the alleged violations with the resulting convictions, as well as the significant facts of Petitioner's prior conviction, which involved serious misconduct. Petitioner freely acknowledged his conduct in Virginia indicating that he had reported all his conduct directly to the police there, conduct which he attributed to his addiction to amphetamines. SR. at p. 37. The prior misconduct was summarized by the ALJ:

> ALJ STANTON:    You know, it goes back to 1999. As I say, I really had some problems, because in 1999 you kidnapped your girlfriend and her daughter at knife point from the state of New Jersey and took them to Steuben County. You attempted to cause the death of your girlfriend with a knife; operated a [motor vehicle] recklessly; and created grave risk of death of two male victims by driving straight at them and causing them to jump from the path of your vehicle. At the time you were in a stolen vehicle.

SR. at p. 37.

The record simply does not establish any prejudice. Considering the foregoing, the plea here was a reasonable course of action and Petitioner can show no harm. *McCullough v. NYS Div. of Parole*, 2015 WL 2340784, at *7 (N.D.N.Y. Apr. 15, 2015).

## IV. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Petition (Dkt. No. 1) be **DENIED** and **DISMISSED**; and it is further

**RECOMMENDED**, that no Certificate of Appealability ("COA") be issued because Petitioner has failed to make "a substantial showing of the denial of a constitutional right" as required by 28 U.S.C. § 2253(c)(2); and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[6] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v.*

---

[6] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

*Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:  October 19, 2021
       Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge